**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| LISA JO PRESSMAN, individually and as Trustee of the Red Rock Realty Trust, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 24-12885-FDS |
| U.S. BANK NATIONAL ASSOCIATION, as Trustee of the Dwelling Series IV Trust, and SN SERVICING CORPORATION, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER ON MOTION TO INTERVENE AND
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

**SAYLOR, J.**

This is an action challenging the validity of a foreclosure proceeding.  Plaintiff Lisa Jo

Pressman seeks to set aside the foreclosure and sale of her property at 30 Red Rock Street, Lynn,

Massachusetts.  She is proceeding *pro se*.  Defendants SN Servicing Corporation and U.S. Bank

National Association, as Trustee of the Dwelling Series IV Trust, are the loan servicer and

mortgagee, respectively.  AlboHomeImp, LLC, the purchaser of the subject property, has moved

to intervene.

The amended complaint asserts claims for breach of contract; promissory estoppel;

negligent misrepresentation; breach of the implied covenant of good faith and fair dealing;

wrongful foreclosure; violation of the Massachusetts consumer protection statute, Mass. Gen.

Laws ch. 93A; and violation of due process.  Before the Court are defendants' motion for

summary judgment as to all counts, AlboHomeImp's motion to intervene, and AlboHomeImp's

motion for summary judgment as to wrongful foreclosure.  For the following reasons, the

motions will be granted.

I.    **Background**

    A.    **Factual Background**

The following facts are undisputed unless otherwise noted.

Lisa Pressman's mother, Barbara Pressman, owned a home at 30 Red Rock Street in

Lynn, Massachusetts.  On May 19, 2010, she executed a Home Equity Line of Credit agreement

for $100,000 with Sovereign Bank.  (Mot. Summ. J. Ex. A, Dkt. No. 31-1).  That loan was

secured by a mortgage on 30 Red Rock Street.  (*Id.* Ex. B, Dkt. No. 31-2).  The mortgage was

recorded on June 7, 2010, in Essex County in book 29512, page 280.  (*Id.*).  In February 2011,

Barbara Pressman transferred the property to herself as Trustee of Red Rock Realty Trust.  (*Id.*

Ex. C, Dkt. No. 31-3).  In early 2012, Barbara Pressman passed away.  (*Id.* Ex. D, Dkt. No. 31-

4).

After her mother's death, Lisa Pressman became the sole beneficiary of Red Rock Realty

Trust and appointed herself trustee.  (*Id.* Ex. E, Dkt. No. 31-5).  On January 5, 2018, she entered

into an assumption and modification agreement with Santander Bank, the successor to Sovereign

Bank.  (*Id.* Ex. F, Dkt. No. 31-6).  She "expressly assume[d] the Mortgage and Note" originally

taken out by Barbara Pressman subject to certain modifications.  (*Id.* at 2).  At that point, the loan

was in default with an outstanding balance of more than $125,000.  (*Id.* at 3-4).  She agreed to a

modified principal balance of $125,057.87 and a loan repayment schedule.  (*Id.* at 4).  That

assumption and modification agreement was then recorded.  (*Id.*).  By January 12, 2018, Barbara

Pressman's account with Santander showed no balance due.  (Opp'n Ex. C, Dkt. No. 45).

On December 12, 2019, SN Servicing Corporation took over servicing Lisa Pressman's

note and mortgage.  (Fogleman Aff. ¶ 12, Dkt. No. 31; Mot. Summ. J. Ex. G, Dkt. No. 31-7).  In

November 2022, SN Servicing took out force-placed insurance on 30 Red Rock Street. (Fogleman Aff. ¶ 25).  According to defendants, the cost of that insurance was never included in Pressman's monthly payments.  (*Id.* ¶ 26).

Meanwhile, in February 2020, Santander assigned the mortgage encumbering 30 Red Rock Street to U.S. Bank National Association as Trustee of Lodge Series IV Trust ("Lodge"). (Mot. Summ. J. Ex. I, Dkt. No. 31-9).  That assignment conveyed the "Mortgage having been given to secure payment of $100,000.00, (Original Principal Amount) which Mortgage is of record in Book, Volume, or Liber No. 29512, at page 280 . . . of the records of Essex County, State of MA, together with the note(s) and obligations therein described and the money due." (*Id.*).  In February 2022, Lodge assigned the mortgage to U.S. Bank Trust Association as Trustee of the Dwelling Series IV Trust ("U.S. Bank").  (*Id.* Ex. K, Dkt. No. 31-11).  It also conveyed the mortgage with an original loan amount of $100,000 recorded in Essex County in book 29512, page 280.  (*Id.*).  Neither assignment mentioned Lisa Pressman or her mortgage modification. (*Id.* Ex. I, Ex. K).  Both assignments were recorded.  (*Id.* Ex. I, Ex. K).

The record suggests that Pressman has been delinquent since at least March 2019.  It appears that she has not made her monthly loan payment of $1,005.37, in full or in part, since then.  (Opp'n Ex. H, Dkt. No. 45).  Pressman has not presented any evidence to the contrary.

Although the record is not clear, it appears that in 2021 SN Servicing began a foreclosure process on 30 Red Rock Street.  Sometime in 2022, Lisa Pressman applied for Homeowner Assistance Fund ("HAF") relief.  HAF was created by Congress to mitigate financial hardship associated with the coronavirus pandemic, and SN Servicing had entered into a collaboration agreement with the Commonwealth of Massachusetts to facilitate the distribution of those funds. (Mot. Summ. J. Ex. J, Dkt. No. 31-10).

The parties dispute what happened next.  According to Pressman, her application was delayed because SN Servicing did not timely provide HAF reinstatement figures.  (Opp'n Ex. G, Dkt. No. 45).  SN Servicing contends that HAF never requested reinstatement figures.  (Fogleman Aff. ¶ 28).  Nonetheless, SN Servicing provided the reinstatement figures to HAF in January 2023 and updated figures in May 2023.  (*Id.* ¶¶ 30-32).  It is undisputed that by May 2023, HAF had informed Pressman that it could not provide financial assistance until she paid her pre-2020 balance of $10,945.  (SOF ¶ 28, Dkt. No. 30).

Pressman then applied for Residential Assistance for Families ("RAFT") funds.[1]  On September 11, 2023, RAFT informed Pressman that it would cover up to $7,000 of her pre-2020 arrears, leaving a balance of approximately $4,000.  (SOF ¶ 31).  Pressman never received those funds.  She alleges that SN Servicing and U.S. Bank ignored requests from RAFT to confirm the availability of HAF funding and the remaining balance.  (Am. Compl. ¶ 25, Dkt. No. 25).  Those allegations, however, are not supported by the evidence.  For its part, SN Servicing contends that it was never contacted by RAFT.  (Fogleman Aff. ¶ 33).

In July 2024, defendant U.S. Bank submitted a mortgagee's affidavit with the Massachusetts land court alleging that Pressman had been given notice to cure default in compliance with Mass. Gen. Laws, ch. 244, § 35A.  (Mot. Summ. J. Ex. M, Dkt. No. 31-13).  On September 20, 2024, U.S. Bank sent to Pressman by certified mail a notice of foreclosure informing her that a foreclosure auction was scheduled for October 30, 2024.  (*Id.* Ex. N, Dkt. No. 31-14).

---

[1] RAFT is a Massachusetts-run program that "provides short-term emergency funding to help . . . with eviction, foreclosure, loss of utilities, and other housing emergencies."  MASS.GOV, *Apply for RAFT (Emergency Help for Housing Costs)*, https://www.mass.gov/how-to/apply-for-raft-emergency-help-for-housing-costs [https://perma.cc/5N2W-FWB5].

On October 28, 2024, Pressman sought a temporary restraining order in state court to prevent the foreclosure sale.  (State Ct. R., Dkt. No. 8).  U.S. Bank then postponed the auction to December 10, 2024.  (Mot. Summ. J. Ex. O, Dkt. No. 31-15).  It sent plaintiff a notice of the postponement by first-class mail.  (*Id.*).

On December 10, 2024, 30 Red Rock Street was sold at auction to AlboHomeImp, LLC. (*Id.* Ex. Q, Dkt. No. 31-17).

### B.    Procedural History

On October 28, 2024, plaintiff filed a complaint in state court.  (State Ct. R.).  She sought a preliminary injunction to prevent the foreclosure of 30 Red Rock Street.  (*Id.*).  Defendants removed the case to this court on November 20, 2024, and opposed plaintiff's motion for preliminary relief.  (Dkt. No. 9).  On December 10, 2024, this court denied plaintiff's motion. (Dkt. No. 12).

Plaintiff filed an amended complaint on March 19, 2025.  (Dkt. No. 20).  That complaint asserts claims for breach of contract, promissory estoppel, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, wrongful foreclosure, violation of Mass. Gen. Laws ch. 93A, and violation of due process.  The parties then conducted discovery.  On June 25, 2025, defendants filed a motion for summary judgment on all counts.  (Dkt. No. 29).

On August 19, 2025, AlboHomeImp, LLC moved to intervene as of right or, in the alternative, permissively.  (Dkt. No. 39).  While that motion remained pending, AlboHomeImp moved for partial summary judgment as to Count 5 (wrongful foreclosure).  (Dkt. No. 46).

## II.    Motion to Intervene

AlboHomeImp has moved to intervene as a matter of right.  Under Federal Rule of Civil Procedure 24(a), "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action."  Fed. R. Civ. P.

24(a). AlboHomeImp is the record owner of the subject property and is currently seeking possession of the premises from plaintiff through the Housing Court. (Mot. Intervene 1, Dkt. No. 39). Plaintiff nevertheless contends that the Court should deny the motion as untimely because it allegedly knew about the federal case for more than six months before seeking to intervene. (Opp'n Mot. Intervene 3, Dkt. No. 43).

Timeliness must be assessed by the totality of the circumstances. *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009). In making the assessment, the court must consider "four factors . . . : (i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention." *Id.*

It is not clear from this record when AlboHomeImp first learned of the federal case. Assuming, without deciding, that it did know about the case for six months before moving to intervene, the first factor weighs against AlboHomeImp. *See id.* (finding a delay of approximately two and one-half months unreasonable). The other factors, however, heavily favor granting the motion. There is little prejudice to existing parties, as there is no settlement agreement and AlboHomeImp does not seek to reopen discovery. *See id.* ("[T]he status of the litigation at the time of the request for intervention is 'highly relevant.'" (quoting *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir. 1992)). And, as the record owner of the subject property, AlboHomeImp would be substantially harmed if the Court granted plaintiff's requested relief. Because the balance of the harms cut sharply in favor of AlboHomeImp, the Court will grant the motion to intervene.

### III.    Motion for Summary Judgment

#### A.    Standard of Review

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation modified). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986) (citation modified). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

In addition, any document filed by a *pro se* party is "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Nonetheless, even a pro se litigant must meet the specificity requirement of Federal Rule 56, at least when the litigant becomes aware that specific facts must be provided to defeat a motion for summary judgment." *Posadas de Puerto Rico, Inc. v. Radin*, 856 F.2d 399, 401 (1st Cir. 1988).

B.      **Analysis**

1.      **Counts 1, 2, and 3: Breach of Contract, Promissory Estoppel, and Negligent Misrepresentation**

Counts 1, 2, and 3 allege that plaintiff suffered harm relating to agreements, promises, or representations that defendants allegedly made.  Plaintiff asserts that defendants agreed or promised not to foreclose on her home, not to include force-placed insurance on her home, to work with her to avoid foreclosure, and to respond to requests to process her HAF application. (Am. Compl. ¶¶ 34-55).

Defendants counter that plaintiff has not identified which contractual term they have allegedly breached; which promise they made that induced forbearance; or which allegedly false representation they made.  (Mem. Supp. Summ. J. 8-13, Dkt. No. 30).  Plaintiff's opposition did not identify the specific basis for these claims, and the Court is not able to discern the basis from the evidence presented.

Furthermore, to the extent that plaintiff may have relied on defendant's statements concerning force-placed insurance, she cannot demonstrate any damages.  The force-placed insurance was not included in plaintiff's monthly payment, and therefore was not part of the delinquency that led to foreclosure.  (Fogleman Aff. ¶ 26).  Plaintiff has not presented any contrary evidence.

2.      **Count 4: Breach of the Covenant of Good Faith and Fair Dealing**

Count 4 alleges that defendants breached the implied covenant of good faith and fair dealing by failing to help plaintiff secure HAF relief and misrepresenting their intent to foreclose on her property.  (Am. Compl. ¶¶ 56-62).[2]

_____

[2] In addition, mortgagees have "a duty to 'act in good faith and must use reasonable diligence to protect the interests of the mortgagor' in the context of an extrajudicial foreclosure and exercise of power of sale." *Santos v. U.S. Bank Nat. Ass'n*, 89 Mass. App. Ct. 687, 701 (2016) (quoting *Williams v. Resolution GGF Oy*, 417 Mass. 377,

The covenant of good faith and fair dealing, which is implied in every contract, "provides that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Weiler v. PortfolioScope, Inc.*, 469 Mass. 75, 82 (2014) (citation modified). "Conceptually, claims for breach of the implied covenant of good faith and fair dealing are distinct from simple breach of contract claims . . . ." *Christensen v. Kingston Sch. Comm.*, 360 F. Supp. 2d 212, 229 (D. Mass. 2005). For one thing, a complaint need not allege a breach of an express term of the contract. *See Speakman v. Allmerica Fin. Life Ins.*, 367 F. Supp. 2d 122, 132 (D. Mass. 2005). Rather, it must allege that defendant acted in "bad faith or [with] an absence of good faith," *see Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 238 (1st Cir. 2013), to "unfairly leverag[e] the contract terms for undue economic advantage," *Blake v. Pro. Coin Grading Serv.*, 898 F. Supp. 2d 365, 389 (D. Mass. 2012). The requirement of good-faith performance is, however, circumscribed by the obligations set forth in the contract, and "the covenant may not be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship." *Speakman*, 367 F. Supp. 2d at 132.

There are two contracts at issue: the assumption and modification agreement between plaintiff and Santander (and, by assignment, U.S. Bank) and the HAF collaboration agreement between the Commonwealth of Massachusetts and SN Servicing.

Even assuming that defendants' failure to timely process plaintiff's HAF application constitutes a breach of the implied covenant that plaintiff has standing to enforce, she cannot

---

382-383 (1994)). "Typically, this entails mak[ing] reasonable efforts to sell the property for the highest value possible." *Id.* (quoting *Armand v. Homecomings Fin. Network*, 2012 WL 2244859, at *5 (D. Mass. June 15, 2012) (alteration in original)). Here, plaintiff does not allege that defendants did not make reasonable efforts in the sale of the property. Her allegations concerning defendants' bad faith and therefore must fall within the doctrine of the implied covenant of good faith and fair dealing.

establish that she incurred damages as a result.  HAF ultimately determined that plaintiff was not eligible for relief because she had pre-2020 arrears.  Thus, assuming that defendants did not provide timely responses, those responses did not contribute to that unfavorable resolution.

Plaintiff alleges that she nonetheless may have been able to pay the pre-2020 arrears through $7,000 of RAFT relief and the assistance of a friend who was willing to lend her the remainder.  (Am. Compl. ¶ 25; Opp'n Summ. J. 12, Dkt. No. 44).  She maintains that she did not receive the RAFT funding because defendants did not confirm the availability of HAF funding.  However, plaintiff has not submitted any evidence of defendants' alleged failure to send her (or RAFT) the required documents or of the availability of a loan from her friend.  To the contrary, defendant SN Servicing maintains, without contradiction, that it was never contacted by RAFT.  (Fogleman Aff. ¶ 33).  On the record before the Court, plaintiff cannot establish that she suffered any damages relating to how defendants processed her HAF application.

Furthermore, there is no evidence that defendants misrepresented their intent to foreclose on the property.  Although defendant SN Servicing discussed the possibility of a reverse mortgage with plaintiff, it explicitly stated that "the investor is not going to agree to postpone the sale for a pending closing."  (Opp'n Ex. R, Dkt. No. 45).  Moreover, with limited exceptions not relevant here, under Massachusetts law "there is no duty to negotiate for loan modification once a mortgagor defaults."  *MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 493 (1st Cir. 2013) (quoting *Peterson v. GMAC Mortg., LLC*, 2011 WL 5075613, at *6 (D. Mass. Oct. 25, 2011)).[3] Absent such a provision, it had no obligation to postpone the sale to enable plaintiff to secure a reverse mortgage.

---

[3] Mass. Gen. Laws ch. 244, § 35B imposes a duty to "take[] reasonable steps and made a good faith effort to avoid foreclosure" for certain categories of mortgages that do not seem to apply here.

### 3. Count 5: Wrongful Foreclosure Based on Bad Faith

Count 5 sets forth a series of allegations that are either entirely conclusory or overlap with other counts. (Am. Compl. ¶¶ 63-74). One allegation, liberally construed, asserts a claim for violation of the Massachusetts statute governing nonjudicial foreclosures. Specifically, plaintiff alleges that defendant U.S. Bank did not hold a valid assignment of the mortgage.

In Massachusetts, a mortgagee may foreclose without prior judicial authorization under the "statutory power of sale" granted by the mortgage. *See* Mass. Gen. Laws ch. 183, § 21 and ch. 244, § 14.[4] That "substantial power" comes with strict statutory requirements. *U.S. Bank Nat. Ass'n v. Ibanez*, 458 Mass. 637, 646 (2011). As relevant here, only "the mortgagee or his executors, administrators, successors or assigns" may exercise the power of sale. Mass. Gen. Laws ch. 183, § 21. Foreclosure by power of sale undertaken by any other party is void. *Ibanez*, 458 Mass. at 647.

Plaintiff maintains that defendant U.S. Bank did not hold a valid assignment of her mortgage and therefore did not have the authority to foreclose on her home. The assignments from Santander to U.S. Bank and from U.S. Bank to Lodge refer only to Barbara Pressman and the original mortgage principal amount. Plaintiff contends that they are invalid because they do not include plaintiff's name, the modified principal amount, or the loan number. Further, she contends that the assignment from Lodge to U.S. Bank was conducted without a valid power of attorney.

---

[4] Under the statute, the mortgagee is "the person or entity then holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder." *Eaton v. Fed. Nat. Mortg. Ass'n*, 462 Mass. 569, 571 (2012).

11

A threshold issue is whether plaintiff has standing to challenge the validity of assignments of a mortgage to which she was neither a party nor beneficiary.  Under Massachusetts law, "a mortgagor has standing to challenge the assignment of a mortgage on her home to the extent that such a challenge is necessary to contest a foreclosing entity's status qua mortgagee."  *Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282, 291 (1st Cir. 2013).  In other words, "a mortgagor has standing to challenge a mortgage assignment as invalid, ineffective, or void (if, say, the assignor had nothing to assign or had no authority to make an assignment to a particular assignee)" but "does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title."  *Id.*

Plaintiff has not established why an assignment referring only to the original mortgagor, the mortgage principal, and the recording information is void or otherwise invalid under Massachusetts law.  In Massachusetts, "a mortgage is a transfer of legal title in a property to secure a debt."  *Ibanez*, 458 Mass. at 649.  The mortgagee maintains legal title to the land until the mortgage is foreclosed or the debt is paid.  *Faneuil Invs. Grp. v. Board of Selectmen of Dennis*, 458 Mass. 1, 6 (2010).

Plaintiff's assumption and modification agreement did not purport to replace or otherwise discharge the original mortgage.  (Mot. Summ. J. Ex. F).  Rather, the agreement acknowledges that the original "[m]ortgage and [n]ote are in full force and effect."  (*Id.* at 3).  While it did increase the principal balance to reflect the debt then owed under the original mortgage, such a change in principal does not create an entirely new obligation.  *See MacKenzie*, 738 F.3d at 495 ("[T]he change in the amount of principal was the result of the capitalization of unpaid interest. In other words, the entire principal balance under the . . . Agreement was debt owed under the

original mortgage; it was not a new obligation replacing the original obligation."). Consequently, the original mortgage continued to encumber 30 Red Rock Street after plaintiff entered into the assumption and modification agreement. There was no new mortgage.

Plaintiff points to the fact that Barbara Pressman's loan account with Santander showed a zero-dollar balance following the assumption and modification agreement as evidence that she entered into a new mortgage. She contends that defendants thus foreclosed on a loan that was paid-in-full. She does not allege, however, that the note has actually been paid in full, and indeed "recognizes that there is a balance owed." (Opp'n AlboHomeImp Mot. Summ. J. 5, Dkt. No. 55). The fact that Barbara Pressman's account was closed does not mean that the secured debt was paid and the mortgagee's legal interest in the property extinguished. Rather, by assuming the mortgage and the note, plaintiff became personally responsible for the existing mortgage debt. The administrative act of adjusting the account of Barbara Pressman, who was deceased, did not void the assumption and modification agreement or discharge the debt.

In addition, there is no dispute that the assignment was in writing and was signed. "[T]he assignment of a mortgage is a conveyance of an interest in land that requires a writing signed by the grantor." *Ibanez*, 458 Mass. at 649 (citing Mass. Gen. Laws ch. 183, § 3). "Other than the requirement of a writing, there are no magic words or strict formalities to be observed in such an assignment." *Azevedo v. U.S. Bank N.A.*, 167 F. Supp. 3d 166, 171 (D. Mass. 2016); *see* Mass. Gen. Laws c. 183, § 28 ("In an assignment of a mortgage of real estate the word 'assign' shall be a sufficient word to transfer the mortgage . . . . "). Moreover, the assumption and modification agreement was recorded on February 2, 2018. Future assignees therefore had constructive notice of the modified terms.

13

Furthermore, plaintiff does not have standing to challenge whether the power of attorney in the assignment from Lodge to U.S. Bank was defective.  *See Pabla v. U.S. Bank Nat'l Ass'n as Tr. for Structured Asset Sec. Corp. Mortg. Pass-Through Certificates, Series 2005-7XS*, 2024 WL 4505216, at *4 (D. Mass. Oct. 16, 2024) (holding that plaintiff lacked standing to challenge a mortgage assignment because "defects alleged in the power of attorney would, at most, render the . . . Assignment voidable"); *see also Wilson v. HSBC Mortg. Services, Inc.*, 744 F.3d 1, 13 (1st Cir. 2014) (holding that plaintiffs lacked standing to challenge a mortgage assignment executed by a person with purported authority because the assignment was binding on the assignor and therefore at most voidable).  Any defect in the power of attorney would render the assignment voidable.

Consequently, because there is no evidence suggesting the relevant assignments were void, plaintiff does not have standing to challenge their validity.

### 4.    Count 6:  Unfair and Deceptive Business Practices in Violation of Mass. Gen. Laws ch. 93A

Count 6 alleges that defendants' conduct constituted an unfair or deceptive act or practice in violation of Mass. Gen. Laws ch. 93A.  Before bringing a Chapter 93A claim, "a plaintiff must mail to the defendant a 'written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon.'"  *Rodi v. Southern New Eng. Sch. of L.*, 389 F.3d 5, 19 (1st Cir. 2004) (quoting Mass. Gen. Laws ch. 93A, § 9(3)).  That "notice requirement . . . is a 'prerequisite to suit'" and "must be alleged in the plaintiff's complaint."  *Id.* (quoting *Entrialgo v. Twin City Dodge, Inc.*, 368 Mass. 812, 812 (1975)).

Defendants have moved for summary judgment on the ground that the complaint does not allege plaintiff sent a Chapter 93A demand letter.  (Mem. Supp. Summ. J. 17-18).  Indeed, the complaint itself alleges that plaintiff "has yet to send [a] demand to the Defendants," and there is

14

no evidence in the record to suggest otherwise.  (Am. Compl. ¶ 79).  "That is sufficient ground to justify dismissal of the Chapter 93A claim." *Rodi*, 389 F.3d at 19 (collecting cases).  The Court will therefore grant summary judgment as to Count 6.

### 5.    Count 7:  Violation of Notice and Due Process

Count 7 alleges that defendants did not comply with the notice requirements set forth in Mass. Gen. Laws ch. 244, § 14.  (Am. Compl. at 9).  Specifically, plaintiff alleges that she was not notified by registered mail of the December 10, 2024 sale nor was notice of that sale published for three successive weeks.  The complaint alleges that that failure deprived plaintiff of her due-process rights.

The Due Process Clauses of the Fifth and Fourteenth Amendment protect against certain types of government action.  *See Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 461 (1952) (Fifth Amendment); *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948) (Fourteenth Amendment).  Defendants are private parties acting on their own behalf.  Thus, their conduct cannot constitute a due-process violation.

Nonetheless, failure to strictly adhere to any of § 14's notice requirements may void the foreclosure sale.  *Ibanez*, 458 Mass. at 647-48.  Under that provision, foreclosure by power of sale

> shall [not] be effectual . . . unless, previous to such sale, notice of the sale has been published once in each of 3 successive weeks, the first publication of which shall be not less than 21 days before the day of sale, in a newspaper published in the city or town where the land lies or in a newspaper with general circulation in the city or town where the land lies and notice of the sale has been sent by registered mail to the owner or owners of record of the equity of redemption as of 30 days prior to the date of sale, said notice to be mailed by registered mail at least 14 days prior to the date of sale to said owner or owners . . . .

Mass. Gen. Laws ch. 244, § 14.

15

Plaintiff has not alleged that notice of the original October 30, 2024 sale was noncompliant. It is undisputed that plaintiff received notice by registered mail of the October 30 sale. (Mot. Summ. J. Ex. N). It is also undisputed that notice of the October 30 sale was published in a Lynn newspaper on October 9, 16, and 23. (*Id.* Ex. Q). After those notices, defendant SN Servicing postponed the auction to December 10, 2024. (*Id.* Ex. O). It notified plaintiff by first-class mail of the postponement. (*Id.*).

"[P]ostponement of a foreclosure sale does not require renewed compliance with § 14 and public proclamation." *Malanowski v. Wells Fargo Bank N.A. Tr. Option One Mortg. Corp. Tr. 2005-1 Asset-Backed-Certificates, Series 2005-1*, 654 F. Supp. 3d 25, 31 (D. Mass. 2023) (collecting cases). Rather, "noticing of a postponement of a foreclosure sale falls under the good faith and commercial reasonableness obligations of a mortgagee." *Stephens-Martin v. Bank of N.Y. Mellon Tr. Co.*, 2015 WL 732087, at *11 (Mass. Land Ct. Feb. 20, 2015) (citing *Fitzgerald v. First Nat. Bank of Bos.*, 46 Mass. App. Ct. 98, 101 (1999)).

Under the circumstances, notifying plaintiff of the postponement by first-class mail complied with those obligations. She did receive actual notice of the postponement, as she sought a preliminary injunction preventing defendants from foreclosing on December 10, 2024. *See Chaves v. U.S. Bank, N.A.*, 335 F. Supp. 3d 100, 108 (D. Mass. 2018) ("'The main purpose' of both the newspaper publication and mailing requirements 'is to provide notice to those affected by the foreclosure sale and to facilitate proof of notice.' . . . [T]hese purposes 'were fully achieved' when the plaintiff 'had actual notice of the sale at least seven days before the scheduled [sale] date.'" (second alteration in original) (quoting *Hull v. Attleboro Sav. Bank*, 33 Mass. App. Ct. 18, 25 (1992))).

16

Accordingly, because the October 30, 2024 sale notices complied with § 14 and defendants provided reasonable notice of the December 10, 2024 postponement, the Court will grant the motion for summary judgment as to Count 7.

## IV.    **Conclusion**

For the foregoing reasons, the motion to intervene of defendant-intervenor AlboHomeImp, LLC is GRANTED.  The motion for summary judgment of defendants U.S. Bank and SN Servicing is GRANTED in its entirety, and the motion for summary judgment on Count 5 of defendant-intervenor AlboHomeImp, LLC is GRANTED.

**So Ordered.**

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  March 27, 2026                United States District Judge

17